Our final case of the day is United States v. Fitzpatrick. Mr. Drykosen. May it please the Court. My name is Justin Drykosen and I represent defendant appellant Mr. Lajuan Fitzpatrick. Your Honors, Mr. Fitzpatrick's conviction should be reversed because the government did not adduce sufficient evidence showing that Mr. Fitzpatrick was aware of and agreed to further the common objective of this conspiracy, which was to redistribute marijuana. Now, the District Court denied Mr. Fitzpatrick's Rule 29 motion on this issue because it said that Cherry, Mark Cherry, had explained to Mr. Fitzpatrick that they would be stealing from a well-known drug dealer, that they would be consuming a portion of the stolen marijuana, and that they would be selling the rest. But that conclusion is not supported by the record, and the government here does not try to defend that conclusion. Because what the District Court did is it conflated multiple conversations. The first conversation took place between Mark Cherry and Lajuan Fitzpatrick outside of Cherry and Fitzpatrick's shared residence. And in that conversation, Cherry tells Fitzpatrick, Bruce Hendry has a lick, a sting, a robbery, that there's some weed, some marijuana, and that they would need Cherry's guns. Could I just say, I don't disagree with you that we don't have the kind of evidence in this case that perhaps the District Court thought was there. But what we do know is that what you just described happens. Cherry says these things. There's this lick. And they know that they go over to the Martinez house. I mean, Fitzpatrick is standing there, you know, with this very powerful assault rifle. I mean, it doesn't sound to me, it seems like that's circumstantial evidence that this was going to be a significant robbery. And a significant robbery to me would mean more than personal use. So whether it's the value of the drugs, I just can't imagine going with that much firepower, you know, to get a joint or two. So why wasn't, you know, maybe by the skin of its teeth, but remembering the standard of review for judgments of acquittal, why isn't there circumstantial evidence that Fitzpatrick, as this thing unfolds, and certainly by the time they get to the front of the house, they've gone to the trouble of having a getaway driver. There are four of them altogether. Why isn't that enough? Well, Your Honor, I think it's important to remember that the drug distribution component of this develops at Robert Nieto's house in his back stairwell, where there's a conversation for between 10 and 20 minutes between Nieto, Hendry and Cherry. Right. Fitzpatrick's sitting in the car. I realize he's not there for that. And he doesn't get relayed who they're going to be stealing from. He doesn't have it relayed to him that there might be a couple pounds of weed. He doesn't have it relayed to him that the plan is going to be to smoke some of this and to sell some of this. None of that is told to Mr. Fitzpatrick. So bearing that in mind, he's aware that there is a robbery, but he's not aware. And he does not agree to further a common objective of further distributing this marijuana after they go and rob the target house. I think what also informs that is what we've mentioned in our brief is that Mr. Fitzpatrick is slow. Mark Cherry testifies as much. Mark Cherry is asked, are you aware that Mr. Fitzpatrick has a learning disability? He says yes. But that's what happens at the guilt stage, right? Most of the rest of the evidence about Mr. Fitzpatrick's limitations come in at sentencing. So the jury might think there are lots of degrees of slow, certainly not enough to keep him from posting himself in front of the car and shooting off multiple rounds. Correct, Your Honor. But the jury did hear and tried to destroy the clothes and changing his clothes and burning them and all the rest of those things that he did. Correct. So to address both your points, the jury did hear that Mr. Fitzpatrick could not read or write at 22 or 23 years old that he was at the time of this robbery. So there is some additional evidence of the degree of slow that he may be. And then to your point about the actions that Mr. Fitzpatrick took post robbery, I think that informs his panic reaction. I'm not here to characterize his behavior as no big deal. Certainly the consequences of his actions were as grave as possible. But those actions occurred once the robbery has gone awry. He has just seen his friend, Mark Cherry, from 11 years old. They've been friends. Go into a house and he hears three gunshots. So there's multiple gunshots that are happening inside the house. There's no indication whether he knows that Mr. Cherry's been shot or someone else. And so then Mr. Fitzpatrick engages on his reckless, dangerous behavior. And so I don't believe that that informs his awareness of and his agreement to further a drug distribution conspiracy because he is explicitly left out of those planning conversations. You know, to get back to, I think, an initial point you made in other in other cases that this court has decided this same type of issue in Lewis in bleach, there's much more evidence. Those defendants are privy to planning conversations. They know that there is supposed to be 15 kilograms of cocaine in a target house and that the house may be guarded by armed gang members. But Mr. Fitzpatrick is not privy to those same sort of discussions that those other defendants are privy to. If it's the last case of the court's day, if there are no further questions, I would reserve the remainder of my time for rebuttal. Certainly, Counsel. Mr. Whalen. Thank you, Your Honors, and may it please the court. Nathaniel Whalen here on behalf of the United States of America. Your Honors, 12 properly instructed jurors sat through four days of trial hearing all the visible evidence of the jurors' arguments and came to the conclusion that Mr. Fitzpatrick was guilty. Mr. Whalen, do you agree that you had to show that Mr. Fitzpatrick knew about a conspiracy to distribute drugs and consciously joined it? Yeah, Your Honor, to prevail on the drug conspiracy count, we had to show he knew and agreed to participate in the conspiracy to the best with the intent to distribute drugs. That's right. And so what's your best evidence, since we don't have anybody telling him? And, you know, Cherry and Hendry are having their chat with Nieto without Mr. Fitzpatrick present. What tells us that he knew that it was that conspiracy rather than a conspiracy, you know, to rob money out of somebody's safe or, you know, any number of other antisocial things that he might have been conspiring to do? Yeah, Your Honor, well, it's going back to Your Honor's question early on, which is the defendant concedes on appeal that he knew the object of the conspiracy was for marijuana. And that's on pages 296 and 316 of the transcript. And there's also no evidence whatsoever that this particular defendant smokes marijuana. And so if you put those two facts together, what you have is a defendant grabbing an assault rifle, surrounding himself by multiple armed and dangerous individuals, transferring cars, enlisting a getaway driver, all of that to go steal drugs. And a jury could reasonably infer, as this court said in Blanche and Lewis in those cases, that no same person would take those steps for a user quantity. So when you take those facts together, there's more than enough evidence for the jury to infer he understood this wasn't for a couple of joints. When you aren't going to surround yourself with these individuals, you aren't going to take these steps for just user quantity, or at the very least, a jury did not have to accept that argument. The standard on review is whether there was enough evidence for a reasonable jury to convict the defendant, whether there was enough evidence, not was there alternate evidence the jury could have considered. And here there was sufficient evidence. And to address another point just raised in the defendant's reply brief, this court should consider what his co-conspirators knew and what they intended. Because, Your Honors, if, for example, I'm planning a surprise party for my parents with my four siblings, they say they talked to me, and all four get up and testify we knew it was a surprise party, we talked with our brother, a jury can reasonably infer that I'm aware of what's going on as well. And so it's not just a conversation in Nieto's, right? It's a conversation outside the shared house of Cherry and Hendry where they first start talking about the idea that this is a robbery. But I thought that no one testified about what the content of the conversation among Cherry, Hendry, and Nieto was during the ride from the Nieto house over to the Martinez house. That's correct, Your Honor, but what Cherry testified to is what he relayed to the defendant outside of their house before they go to Nieto's. And that's again on pages 296 and 316 of the sentencing transcript, where Cherry says to the defendant, we're going to do a robbery. We need guns. There's some weed, some marijuana. It's on page 315 as well, Your Honor. And so that conversation happens. Then they get in the car, they drive to Nieto's. Fitzpatrick is certainly in the car at Nieto's. Then they have a conversation flushing out further details where Nieto says there are multiple pounds of marijuana. Then they switch cars. But it's unknown to Fitzpatrick. Correct. That's correct, Your Honor. And then they switch cars with Fitzpatrick carrying the assault rifle into the second car, and then they go to the robbery. As Your Honor pointed out, he's standing in the middle of the street firing, you know, protective fire. I do think a jury can infer the fact that he understands there's more going on than just, you know, them trying to get a couple joints. You aren't reasonably going to stand in the middle of the street taking those actions if it's just a small-time robbery. In fact, I don't think there's even necessarily a need for a lookout man, which Fitzpatrick was, for a small-time robbery like this. And the jury can infer that. So, Your Honors, the properly instructed jury, we asked them to make reasonable inferences all the time, use their common sense. The jury could have used this common sense, reached the verdict it did here. There's no reason to reverse on a sufficiency challenge, which is a high burden for the defendant to overcome. The defendant didn't address any of the sentencing arguments. I'll just briefly touch on them, which is if you read the sentencing transcript, Judge Simon is grappling with the issues the defendant raises on appeal. He's grappling with how long the sentence is, the sentences the co-conspirators got, Mr. Fitzpatrick's upbringing, which he recognizes was horrible. The sentence is not substantively unreasonable. This is not the case where this court should the first time reverse a below-guideline sentence is substantively unreasonable. Unless this court has any further questions on either the sufficiency or the sentencing arguments, we would ask that you affirm the conviction and sentence. Thank you. Thank you, Mr. Whalen. Anything further, Mr. Dracosa? Just a couple of brief points. The government brings up that there's no evidence in the record that Mr. Fitzpatrick smoked marijuana. But there's also no evidence in the record that he didn't smoke. And to raise that now sort of flips the burden and says that the defendant should have proved at trial that he smoked marijuana. And the second thing is, again, the government relies on this no sane person language, would have taken these actions. And that's from Lewis, in which the defendant knew of and expected 15 kilograms of cocaine to be inside a house and went to a house that was supposed to be guarded by armed gang members. And then third, the argument that because everyone else knew that this was a distribution of marijuana conspiracy that Mr. Fitzpatrick should have known is belied by the fact that Mr. Fitzpatrick is not part of the conversation in which that conspiracy is developed. And also that Mr. Fitzpatrick does not intuit things the way other folks would intuit things. And unless, I'm happy to address any sentencing arguments from the court, but unless there's any questions, I would ask that this court reverse Mr. Fitzpatrick's conviction. Thank you very much. Mr. Dreykosen, the court appreciates your willingness and that of your firm to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement and the court will be in recess. Thank you.